1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    ZIR ION WEEMS,                          No.  2:21-cv-01392-KJM-CKD P

12                   Petitioner,

13          v.                                 FINDINGS AND RECOMMENDATIONS

14    ROBERT BURTON, et al.,

15                   Respondents.

16

17          Petitioner is a state inmate proceeding through counsel in this federal habeas corpus action

18    filed pursuant to 28 U.S.C. § 2254.  Petitioner challenges his conviction following a jury trial in

19    the Butte County Superior Court for the first degree murder of his wife.  He was sentenced to 25

20    years to life in prison.  Respondent has filed an answer and petitioner has filed a traverse.  ECF

21    Nos. 9, 13.  Upon careful consideration of the record and the applicable law, the undersigned

22    recommends denying petitioner's habeas corpus application for the reasons set forth below.

23    **I.      Factual and Procedural History**

24          **A.  Jury Trial**

25          After independently reviewing the record, this court finds the state appellate court's

26    summary of the evidence accurate and adopts it herein.[1]

27    _____

[1]See 28 U.S.C. § 2254(e)(1) (emphasizing that "a determination of a factual issue made by a State

28    court shall be presumed to be correct" unless the petitioner rebuts it by clear and convincing

                                              1

[Petitioner][2] married Angelica after she got pregnant when she was 16 years old.  Angelica's mother had been hesitant to consent to the marriage but finally relented.  Shortly after the marriage, [petitioner] whispered to Angelica's mother, "Now she's mine."  [Petitioner] and Angelica eventually had four children.

During the marriage, [petitioner] frequently yelled at Angelica, commanded her to do things, and called her demeaning names in front of other family members.  Angelica also frequently had black eyes and bruises on her arms and legs.  [Petitioner] treated Angelica in a controlling manner and said that, if Angelica ran away, "heads would roll," referring to family members.  Family members and friends noted that [petitioner] isolated Angelica during the year or more before her death.

When Angelica went missing, she and [petitioner], with their children, had been staying at the home of [petitioner]'s grandmother.  [Petitioner] and his father were replacing the kitchen floor. In the evening, [petitioner] and Angelica left the house for a walk.  [Petitioner] returned without Angelica and said she had gone for a walk by herself.  Angelica did not return that night.  In the morning, [petitioner] was also gone.

During the evening of the next day, [petitioner] was found near a shed on his grandmother's property.  He was bleeding from large lacerations on his arms.  A bloody razor-blade tool was in the shed.  [Petitioner] was dirty and had dirt under his fingernails.  When [petitioner] later spoke to his mother, she asked about Angelica, and [petitioner] told her that Angelica did not want him anymore.

Angelica's body was found less than a month later, buried in sand near the Sacramento River.  It was a place [petitioner] had visited frequently with family members.  Angelica was wearing what she wore on the day she went missing, and an empty can of the kind of soda [petitioner] drank was found nearby.

Several witnesses testified concerning injuries they observed on Angelica during her marriage to [petitioner] and statements Angelica made about [petitioner]'s abuse and threats.  For example, one of Angelica's coworkers testified Angelica told her petitioner threatened to kill Angelica and Angelica's mother.  [Petitioner]'s brother testified Angelica told him [petitioner] kicked her in the back or bottom.  [Petitioner]'s sister testified she saw Angelica hide from [petitioner], and that Angelica was fearful, shaky, and crying.  Angelica had scratches on her face and arm and said [petitioner] had attacked her.  Another one of Angelica's coworkers testified that Angelica came to work with black eyes and scratches on her face and neck.  Additional witnesses testified about Angelica's statements, but [petitioner]'s contentions on appeal do not require that we recount each one.

_____

evidence).

[2] In light of the procedural posture of this case, the court has substituted the word "petitioner" for "defendant."  These substitutions appear in brackets.

2

1

2          **B.  Direct Appeal**

3              Following his sentencing, petitioner filed a direct appeal.  On February 9, 2017, the

4    California Court of Appeal affirmed petitioner's conviction but ordered the abstract of judgment

5    corrected to reflect petitioner's minimum eligible parole date.  ECF No. 1 at 33-41 (direct appeal

6    opinion).

7              The California Supreme Court denied petitioner's petition for review on March 11, 2020.

8    ECF No. 10-6.

9          **C.  Federal Habeas Petition**

10             Petitioner raises three claims for relief in his 28 U.S.C. § 2254 petition.  He first raises a

11   Sixth Amendment Confrontation Clause claim based on the trial court's admission of prejudicial

12   statements by the victim under the forfeiture by wrongdoing exception to the hearsay rule.  Next,

13   petitioner contends that the trial court violated his right to due process by admitting evidence of

14   these same prior acts of domestic violence between him and the victim.  Lastly, petitioner asserts

15   that these trial court evidentiary rulings amounted to cumulative prejudicial error entitling him to

16   habeas relief.

17             In its answer, respondent first distinguishes the Confrontation Clause claim raised in

18   petitioner's habeas application from the remaining two claims that rely merely on state law or

19   have "no support in clearly established Supreme Court precedent."  ECF No. 9 at 9.  With regard

20   to the Confrontation Clause claim, respondent asserts that "[p]etitioner simply cannot ask this

21   Court to second-guess the state court's finding that the California Evidence Code requires a

22   finding of an ongoing criminal action to apply the state's forfeiture by wrongdoing hearsay

23   exception."  ECF No. 9 at 10.  "A fairminded jurist could agree with the state court of appeal that

24   there is no such requirement [for a pending judicial proceeding] in <u>Giles</u>, and <u>Giles</u> indicates no

25   such pending-action requirement exists."  ECF No. 9 at 13.  Additionally, respondent points out

26   that there is no constitutional violation in this case because the victim's challenged statements

27   admitted at petitioner's trial were not testimonial statements for Confrontation Clause purposes

28   because they were not made to law enforcement or made for the primary purpose of creating

1  evidence used in a future prosecution.  ECF No. 9 at 14.  Although respondent recognizes that

2  Ninth Circuit precedent establishes that multiple erroneous evidentiary rulings can rise to the

3  level of a due process violation when their combined, cumulative effect renders a trial

4  fundamentally unfair, respondent argues that there was no error in petitioner's case.  ECF No. 9 at

5  11-12.  Thus, a cumulative error argument does not entitle petitioner to relief.

6          In his traverse, petitioner focuses exclusively on his Confrontation Clause claim for relief.

7  ECF No. 13-1.  Petitioner argues that "both respondent's and the state court's application of Giles

8  unreasonably ignored the historical framework that case provided in explaining how the

9  forfeiture-by-wrongdoing doctrine should be applied."  ECF No. 13-1 at 2.  This hearsay

10  exception was limited to cases where the "defendant engaged in conduct *designed* to prevent the

11  witness from testifying."  ECF No. 13-1 at 2-3 (emphasis in original).  In petitioner's case, "the

12  state court had not received any evidence showing that petitioner killed Angelica to procure her

13  unavailability at a legal proceeding or criminal investigation, and it was therefore unreasonable

14  for the state court [of appeal] to find otherwise."  Id. at 3.

15  **II.      AEDPA Standard of Review**

16      To be entitled to federal habeas corpus relief, petitioner must affirmatively establish that the

17  state court decision resolving the claim on the merits "was contrary to, or involved an

18  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

19  of the United States.  28 U.S.C. § 2254(d)(1).  The "contrary to" and "unreasonable application"

20  clauses of § 2254(d)(1) are different, as the Supreme Court has explained:

21  
22  
23  
24  
25  
26  
27  
> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

28  

4

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103. The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and standards flowing from precedent."  Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law. Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044, 1057 (9th Cir. 2004).

Relief is also available under the AEDPA where the state court predicates its adjudication of a claim on an unreasonable factual determination.  28 U.S.C. § 2254(d)(2).  The statute explicitly limits this inquiry to the evidence that was before the state court.  See also Cullen v. Pinholster, 563 U.S. 170 (2011).  Under § 2254(d)(2), factual findings of a state court are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination.  A petitioner must show clearly and convincingly that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338 (2006).

If petitioner meets either of the 28 U.S.C. § 2254(d) standards, then the federal habeas court reviews the merits of the constitutional claim under pre-AEDPA standards in order to be entitled to relief.  Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc).  While there is no required order in which these two inquiries must be conducted, federal habeas courts generally apply Section 2254(d) analysis first because it is a high hurdle for petitioners to overcome.  In applying these standards, federal courts review the last reasoned state court decision on each claim for relief.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

**III.     Analysis**

**A. Confrontation Clause Challenge**

Petitioner contends that the victim's hearsay statements to her family and friends about prior incidents of domestic violence were improperly admitted under the forfeiture by wrongdoing exception to the Confrontation Clause because there was no pending legal proceeding at which she was expected to testify.  According to petitioner, the California Court of Appeal's rejection of this claim was contrary to or an unreasonable application of the Supreme Court decision in Giles v. California, 554 U.S. 353 (2008).  ECF No. 1 at 21-27.  "As there were no proceedings at which Angelica might have been a witness at the time of her death, none of her statements could have been admissible under [California Evidence Code] section 1390(a) or Giles."  ECF No. 1 at 23-24.   Petitioner also relies on the common law roots of the forfeiture by wrongdoing exception arguing that "the historical basis for the forfeiture rule suggests that the 'exception applied only when the defendant engaged in conduct designed to prevent the witness from testifying.'"  ECF No. 1 at 26 (citing Giles, 554 U.S. at 359).  The remainder of petitioner's argument focuses on the prejudicial nature of the victim's hearsay statements that concerned "repeated assaults, choking incidents, and death threats" by petitioner.

**1.  Last Reasoned State Court Opinion**

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Ylst v. Nunnemaker, 501 U.S. at 803; see also Gill v. Ayers, 342 F.3d 911, 917 n. 5 (9th Cir. 2003) (explaining that federal courts "look through" unexplained rulings of higher state

courts to the last reasoned decision).  In this case, petitioner raised this Confrontation Clause

challenge in state court on direct appeal.  The California Court of Appeal denied this claim in a

reasoned decision.  Therefore, this court "looks through" the subsequent silent denial by the

California Supreme Court and reviews the California Court of Appeal's decision for objective

reasonableness under 28 U.S.C. § 2254(d).  Ylst, 501 U.S. at 803.

The California Court of Appeal rejected petitioner's challenge to the admission of the

victim's statements concerning her prior abuse on state law evidentiary grounds as well as on

Confrontation Clause grounds.

> Evidence Code section 1390, subdivision (a) provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement is offered against a party that has engaged, or aided and abetted, in the wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness." The party seeking to introduce evidence under this hearsay exception (here, the prosecution) must establish admissibility in a foundational Evidence Code section 402 hearing. The hearsay may be used in the foundational hearing, but there must also be independent corroborative evidence to support admission of the hearsay evidence at trial. (Evid. Code, § 1390, subd. (b).)

> After a foundational hearing, the trial court ruled that, under the forfeiture-by-wrongdoing hearsay exception, several witnesses could testify concerning Angelica's statements to them about defendant's abuse. Some of the hearsay evidence is recounted in the background, above.

> The forfeiture-by-wrongdoing hearsay exception sprang from the United States Supreme Court's confrontation clause jurisprudence. A defendant forfeits his Sixth Amendment right to confront a witness against him when the defendant, by a wrongful act, makes the witness unavailable to testify at trial. (*Giles v. California* (2008) 554 U.S. 353, 355, 358 [171 L.Ed.2d 488] (*Giles*).) In *Giles*, the United States Supreme Court held that the doctrine of forfeiture by wrongdoing permits admission of unconfronted statements of an unavailable witness only if the trial judge finds by a preponderance of the evidence that the defendant by a wrongful act made the witness unavailable with the intent of preventing the witness from testifying. (*Id*. at pp. 358-368.) The goal of the doctrine was to remove the "otherwise powerful incentive for defendants to intimidate, bribe, and kill the witnesses against them -- in other words, it is grounded in 'the ability of courts to protect the integrity of their proceedings.' " (*Id*. at p. 374.)

> In *Giles*, the court addressed application of the doctrine specifically to domestic violence cases: "Acts of domestic violence often are intended to dissuade a victim from resorting to outside help, and include conduct designed to prevent testimony to police officers or

cooperation in criminal prosecutions. Where such an abusive relationship culminates in murder, the evidence may support a finding that the crime expressed the intent to isolate the victim and to stop her from reporting abuse to the authorities or cooperating with a criminal prosecution -- rendering her prior statements admissible under the forfeiture doctrine. Earlier abuse, or threats of abuse, intended to dissuade the victim from resorting to outside help would be highly relevant to this inquiry, as would evidence of ongoing criminal proceedings at which the victim would have been expected to testify." (*Giles, supra*, 554 U.S. at p. 377.) Thus, the doctrine applies to evidence the defendant intended to dissuade the victim from reporting the abuse to law enforcement authorities, as well as from testifying at trial. (*People v. Banos* (2009) 178 Cal.App.4th 483, 502.)

There was ample evidence defendant sought to isolate Angelica and prevent her from reporting his abuse. On appeal, however, defendant argues the forfeiture-by-wrongdoing hearsay exception was unavailable to the prosecution because there was no pending legal proceeding against defendant when he isolated, abused, and finally killed Angelica. He asserts: "None of Angelica's hearsay statements could have been properly admitted under [Evidence Code] section 1390(a) because there was no evidence that any legal proceeding at which Angelica might be a witness was pending at the time the statements were made. The closest thing to such evidence was the information that Angelica filled out a domestic violence services form with a private agency, and there was no evidence that this form ever led to any legal proceeding such as a petition for a domestic violence restraining order. As there were no proceedings at which Angelica might have been a witness at the time of her death, none of her statements could have been admissible under [Evidence Code] section 1390(a)." (Fn. omitted.)

Defendant provides no authority for his attempt to impose a prerequisite (namely, a pending legal proceeding) to invoking the forfeiture-by-wrongdoing hearsay exception. We know of no such authority and disagree that this prerequisite exists. Defendant implies that, because the forfeiture-by-wrongdoing doctrine applies to defeat a confrontation-clause challenge to admission of a testimonial statement, the declarant's prior statement must have been testimonial to qualify for the forfeiture-by-wrongdoing hearsay exception. Although the forfeiture-by-wrongdoing doctrine may work as an exception to a confrontation-clause challenge that a statement was testimonial and therefore inadmissible, Evidence Code section 1390 is expressed as an exception to the hearsay rule and does not require that the statement be made while a legal proceeding was pending. Therefore, defendant's attempt to impose this prerequisite to invoking the forfeiture-by-wrongdoing hearsay exception is without merit.

In his reply brief, defendant observes that the deceased witness's statements were made to police in *Giles* and in *People v. Kerley* (2018) 23 Cal.App.5th 513, a recent case applying the forfeiture-by-wrongdoing hearsay exception. But, while those cases involved statements to police, the courts did not suggest that the forfeiture-by

8

wrongdoing hearsay exception would not apply to statements made to people other than police. Furthermore, a requirement that the statements be made to police is different from a requirement that there be a pending legal proceeding, which was defendant's argument in his opening brief. Therefore, defendant's attempt to raise a new argument in his reply brief is forfeited. (*Neighbours, supra,* 217 Cal.App.3d at p. 335, fn. 8.)

## 2. 28 U.S.C. § 2254(d) Analysis

The parties in this case agree that the victim's statements were not testimonial in nature because they were all made to family, friends, or coworkers rather than to law enforcement.  See Crawford, 541 U.S. 36, 51, 68 (2004) (finding that the scope of the Confrontation Clause extends to out-of-court testimonial statements that include prior testimony and police interrogations); see also Davis v. Washington, 547 U.S. 813 (2006) (expressly refusing to determine when statements made to non-law enforcement personnel were "testimonial" for purposes of the Confrontation Clause).  This is a critical distinction between the present case and Giles, upon which petitioner relies, to justify habeas relief in this matter.[3]  In Giles, the victim's statements that were admitted at trial were made to a police officer who responded to her report of domestic violence three weeks before her death.  554 U.S. at 356-357.  The majority in Giles explained that "only testimonial statements are excluded by the Confrontation Clause.  Statements to friends and neighbors about abuse and intimidation… would be excluded, if at all, only by hearsay rules…."  Giles, 554 U.S. at 376; see also Whorton v. Bockting, 549 U.S. 406, 420 (2007) (emphasizing that the Confrontation Clause has "no application" to non-testimonial statements post-Crawford); Crawford, 541 U.S. at 51 (stating that "not all hearsay implicates the Sixth Amendment's core concerns.").  Thus, a fairminded jurist could find that the Supreme Court's decision in Giles, concerning the forfeiture by wrongdoing exception to the Sixth Amendment, applies only to testimonial statements.  See Delgadillo v. Woodford, 527 F.3d 919, 927 (9th Cir. 2008) (concluding that the state court's implicit finding that the victim's statements to her coworkers did not implicate the Confrontation Clause was not an unreasonable application of clearly

---

[3] On remand, the California Court of Appeal concluded, in light of Crawford, that the decedent's "statements were testimonial, because they were made in response to a focused police interview aimed at establishing the circumstances of a crime."  People v. Giles, 2009 WL 457832 at *3 (Cal. Ct. app. Feb. 25, 2009).

1    established federal law).  Based on this distinction, petitioner cannot demonstrate that the

2    California Court of Appeal's rejection of his Confrontation Clause challenge was contrary to or

3    an unreasonable application of Giles.  The California Court of Appeal was free to determine, as a

4    matter of state evidentiary law, that a pending legal proceeding was not required to admit the

5    victim's non-testimonial statements under the forfeiture by wrongdoing exception delineated in

6    California Evidence Code § 1390.  This application of state law by the California Court of Appeal

7    is not reviewable in this habeas corpus proceeding.  See Estelle v. McGuire, 502 U.S. 62, 67-68

8    (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court

9    determinations on state-law questions."); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.

10   1991) (stating that the federal courts "are not a state supreme court of errors; we do not review

11   questions of state evidence law.").  Thus, the undersigned recommends denying relief on this

12   claim.

13       **B.  Due Process Challenge**

14       In a separate claim, petitioner challenges the admission of the victim's statements

15   involving prior acts of domestic violence pursuant to California Evidence Code § 1109 as a

16   violation of his due process rights under the Fourteenth Amendment.  ECF No. 1 at 27-30.

17   Petitioner asserts that there was no evidence adequately connecting petitioner to the victim's prior

18   bruises and scratches that were observed by family and friends to justify admission of this

19   evidence.  Absent direct evidence that petitioner was responsible for these prior incidents of

20   violence, the trial court should have excluded the victim's hearsay statements of prior domestic

21   violence.  Petitioner asserts that the admission of the prior acts of domestic violence was

22   "fundamentally unfair" and an arbitrary application of state law resulting in a due process

23   violation.  ECF No. 1 at 30.

24       **1.  Last Reasoned State Court Opinion**

25       The California Court of Appeal's decision is the least reasoned state court opinion

26   denying relief on this claim.  It rejected the claim as follows:

27           [Petitioner] argues that admission of Angelica's statements violated
             his due process rights because it was fundamentally unfair.
28           However, he does not explain how admission of the evidence was

10

fundamentally unfair. [Petitioner] also argues that arbitrary deprivation of a purely state law entitlement violates due process. But, he fails to explain how the trial court arbitrarily deprived defendant of a state law entitlement. An appellant bears the heavy burden of demonstrating a constitutional violation. (People v. Escobar (2000) 82 Cal.App.4th 1085, 1095.) Simply stating that admission of evidence violated his constitutional due process rights does not carry that burden.

### 2.  28 U.S.C. § 2254(d) Analysis

Petitioner does not explain how the state court's rejection of his due process challenge was contrary to, or an unreasonable application of, Supreme Court precedent. Here again, petitioner's argument sounds more persuasive as a challenge to the state court's application of state evidentiary rules than a federal habeas corpus claim that is subject to AEDPA deference. See Briceno v. Scribner, 555 F.3d 1069, 1077 (9th Cir. 2009) (emphasizing that "[o]ur habeas powers do not allow us to vacate a conviction 'based on a belief that the trial judge incorrectly interpreted the California Evidence Code in ruling' on the admissibility of evidence.") (citation omitted). This is an important distinction because the Supreme Court has never decided what quantum of evidence is necessary to connect a criminal defendant to a prior bad act before such evidence is rendered admissible as a matter of due process, instead leaving it to state rules of evidence. See Estelle v. McGuire, 502 U.S. 62, 69 (1991) (determining in the context of battered child syndrome that "the evidence of prior injuries presented at McGuire's trial, whether it was directly linked to McGuire or not, was probative on the question of the intent with which the person who caused the injuries acted" and thus not a due process violation); Spencer v. Texas, 385 U.S. 554, 563-64 (1967) (rejecting the argument that the Supreme Court is "a rulemaking organ for the promulgation of state rules of criminal procedure"). Absent any clearly established federal law, petitioner cannot demonstrate that he is entitled to federal habeas corpus relief. See 28 U.S.C. § 2254(d)(1).

Additionally, petitioner does not explain how the California Court of Appeal decision was contrary to the broad principles of due process applicable to evidentiary rulings which are clearly established federal law. The admission of evidence violates due process only if there is no permissible inference the trier of fact can draw from it. See Boyde v. Brown, 404 F.3d 1159,

11

1    1172 (9th Cir. 2005); Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).  In this case,

2    the trial court deemed the prior acts of domestic violence relevant to establishing petitioner's

3    motive and intent.  See e.g., ECF No. 10-8 at 4-5.  Because there was a permissible inference the

4    jury could draw from the evidence, there was no due process violation in this case.  Thus,

5    petitioner fails to demonstrate that the California Court of Appeal's denial of relief was contrary

6    to federal due process standards.

7         Moreover, the trial court conducted an extensive and detailed 402 hearing with respect to

8    each witness's testimony concerning the prior acts of domestic violence.  See ECF No. 10-7 at

9    57-267 (Reporter's Transcript).  It admitted certain statements by certain witnesses only after

10   balancing the prejudicial nature of the testimony against its relevance as required by California

11   Evidence Code § 352.  See e.g., ECF No. 10-8 at 14 (excluding testimony by Vanessa Granados

12   of petitioner's threat to kill the victim while pointing a gun at her during the "Highway 99"

13   incident under California Evidence Code § 352); ECF No. 10-8 at 16 (excluding testimony of the

14   victim's statement that petitioner had punched her in the face early in their marriage); ECF No.

15   10-8 at 20, 24 (excluding victim's statements that she had been "abused" and that petitioner "was

16   abusive"); ECF No. 10-8 at 24-25 (excluding testimony of Gabriella Ventura about Highway 99

17   incident).  In this manner, the undersigned does not find that the trial court admitted the prior

18   domestic violence evidence in whole cloth or in an arbitrary fashion as argued by petitioner.  By

19   conducting the balancing test required by California Evidence Code § 352, the admission of the

20   prior acts of domestic violence did not even run afoul of Ninth Circuit precedent.[4]  See United

21   States v. LeMay, 260 F.3d 1018, 1027 (9th Cir. 2001).  In LeMay, the Ninth Circuit rejected a

22   due process challenge to the federal rule of evidence that permitted the introduction of prior acts

23   of child molestation by a criminal defendant accused of child molestation.  In so doing, the court

24   reasoned that  "there is nothing fundamentally unfair about the allowance of propensity

25   evidence…. LeMay, 260 F.3d at 1026.  Because the federal rules of evidence also required the

26

27   _____

[4] Nor would federal habeas relief be available if the state court decision ran afoul of Ninth Circuit precedent.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000) (explaining that, as a result of the AEDPA, habeas relief is no longer available when a state court decision conflicts with Ninth Circuit precedent on a federal Constitutional claim).

28

1    probative value of the prior bad act evidence to be outweighed by its prejudicial impact, "the right

2    to a fair trial remains adequately safeguarded." LeMay, 260 F.3d at 1026.  The right to due

3    process is thus violated only when the prior bad act evidence has no relevance or if its potential

4    for prejudice far outweighs any relevance it may have. Id. at 1026-27.  Similarly, in this case,

5    petitioner's right to due process was adequately protected by the trial court's balancing of the

6    prejudicial versus probative value of the prior domestic violence evidence.

7        Based on this analysis, the undersigned finds that the California Court of Appeal's

8    decision denying the due process claim was neither contrary to nor an unreasonable application of

9    clearly established federal law.  28 U.S.C. § 2254(d).  Thus, the court recommends denying

10   habeas relief with respect to the admission of the prior acts of domestic violence.

11       **C. Cumulative Error Claim**

12       Lastly, petitioner contends that the combined effect of the trial court's evidentiary rulings

13   was so prejudicial as to deny him his right to a fair trial.  ECF No. 1 at 31.

14          **1. Last Reasoned State Court Opinion**

15       The California Court of Appeal denied relief on petitioner's cumulative error claim

16   finding that there was no individual trial error, much less cumulative errors that would justify

17   relief.  See ECF No. 1 at 41 (direct appeal opinion).

18          **2. 28 U.S.C. § 2254(d) Analysis**

19       The state court's rejection of this claim was not objectively unreasonable in light of

20   clearly established federal law.  See United States v. Rivera, 900 F.2d 1462, 1471 (9th Cir. 1990)

21   (emphasizing that "a cumulative error analysis should evaluate only the effect of matters

22   determined to be errors, not the cumulative effect of non-errors.").  Thus, habeas relief is not

23   warranted.  The undersigned recommends denying relief on this claim.

24       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

25   habeas corpus be denied.

26       These findings and recommendations are submitted to the United States District Judge

27   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

28   after being served with these findings and recommendations, any party may file written

13

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 11, 2023

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/weem1392.F&R

14